All right, Mr. Padilla, you have reserved two minutes for rebuttal, so that gives you two minutes to start. You may proceed. May it please the court, Alexis Padilla for Mr. Frank Brandon. Your Honor, this on some level is a very straightforward matter. This plaintiff's malicious prosecution claim was dismissed on summary judgment. On that motion, plaintiff was entitled to all inferences, all factual inferences. The district court, the magistrate court before it, made factual inferences in favor of the defendant in order to reach the conclusion that probable cause existed both for the arrest and for the malicious prosecution or for charging Mr. Brandon. Now, reasonably, I'm willing to concede that an officer who arrives at the scene of an accident, a motor vehicle accident, and finds an individual unsteady on his feet is not required to put on their doctor hat and determine that this person is actually suffering a stroke. So that's why I conceded the false arrest claim. I could see how an officer could argue that there's probable cause for that. But four days later, when the individual comes back from the hospital and the officer may or may not have been told that he had suffered a stroke and the facts that the officer is relying on for probable cause to determine that he was driving under the influence- Is there any evidence in the record to show that Officer Kahn learned of the stroke before he issued the desk appearance ticket? Officer Kahn testified in his deposition that he could not remember when he was told that Mr. Brandon had suffered a stroke. I think that that- Is there any evidence that at the time he issued the DAT, he knew at least there was a claim that the plaintiff had had a stroke? The testimony itself is evidence that a jury should weigh and determine the credibility of. Well, but there has to be some evidence in the record that would support a jury verdict, and that's what I'm asking you. Is there any- He stated that he was aware. Is there any evidence in the record to show that Officer Kahn knew when he issued the DAT that there had been a stroke? No, because he testified that he couldn't remember at what point in the day he was made aware that Mr. Brandon had suffered a stroke. So there's an open question as to whether he knew it before he issued the DAT with the charges or whether it came to his knowledge later. But either way, he certainly knew that Mr. Brandon had been in the hospital for four days, and he certainly knew that there was no other evidence that Mr. Brandon was under the influence of drugs. There was nothing- But the district court also said that, at a minimum, there was qualified immunity here, and your brief doesn't really address that issue. I don't think qualified immunity applies at all, and I don't think that the court actually reached the qualified immunity question to make its determination. It dismissed the claim solely on the basis that there was objective probable cause. No, the district court said there was arguable probable cause, and that was an alternate basis for the ruling. I'm not, I didn't- You don't seem to address that, which I think is problematic because that's an independent basis on which the district court dismissed. I understand, but I didn't read the decision that way. I read the footnote about qualified immunity almost as if it was a quick, as if to say, even if there were facts that amounted to an issue of fact, that there would still be qualified immunity. But I don't think qualified immunity should apply where the court is making factual determinations in the defendant's favor. I don't even think the court should get to that question. Well, arguable probable cause basically is an inquiry as to whether any reasonable police officer could have concluded that there was probable cause here. And if the answer is yes, a reasonable police officer could have, then that's enough. I don't think that some indication that drugs were present in this case. But arguably probable cause arises. But there's a certified officer, I mean an officer who's a drug recognition expert, who having observed Mr. Brandon's appearance and his conduct, concluded that he was under the influence of narcotics. Is that not something that the officer can rely on? Not reasonably, and I think the question of whether that's reasonable to rely on certainly is a question for the jury. I mean, what you're saying, what- The issue of probable cause is not a jury question. The issue of probable cause is for the court to decide. Well, there's a reasonableness question, right, before anyone can determine that there's objective probable cause, right? So this whole issue of the drug recognition expert really, in some ways, is at the heart of this case. How is it that a person can simply look at another person and say, that person's on drugs? It's an unmedical, unscientific opinion that I think should hold no weight whatsoever. In fact, I'm kind of shocked that the NYPD employs these people. That goes to whether that officer's opinion is reasonable, but- But that was relied upon. It's unreasonable for Officer Khan to rely on that opinion, together with the facts about driving the wrong way down the street, failing to, the different tests. Taking it all together, and the magistrate judge certainly discussed this qualified immunity. And why couldn't a reasonable police officer have concluded that there was a basis to issue a DAT? Because four days later, when you know this person has been in the hospital, and the facts that you're basing your conclusion on are all consistent with a stroke. All they ever pointed to, there was the car accident, there was this unsteadiness on the scene, and there was this inability to perform the field sobriety test. All of that is consistent with a stroke. So when he comes back four days later from the hospital, you don't just get to say, well, because typically being under the influence of drugs is not going to keep you in the hospital for four days. Right? Some inquiry needed to be made. There's a record that indicates when the stroke diagnosis was made, or that what the diagnosis said was the time of the stroke, right? The diagnosis- You experienced a stroke at the time of the accident, or shortly after the time of the accident? There's nothing in the record about that. I believe the plaintiff's medical records were part of the discovery in this case. But do they indicate- The officer didn't have access to the medical records when he issued the DAT. Right, but he knew that he'd been in the hospital for four days. And he says that he doesn't know exactly when someone else made him aware that my client had suffered from a stroke. Mind you, my client's in custody the entire time he's at the hospital. So this officer's colleagues are actually in the room observing the treatment that he's receiving while he's handcuffed to a hospital bed. And what liberty restraint did the issuance of the desk appearance ticket have on your client? He had to go back and forth to court numerous times before the case was dismissed. So that's a liberty restraint sufficient enough to sustain a constitutional challenge, you think? Yes. He wasn't incarcerated or held? There was no post arraignment confinement, no. No, thank you. On some level, this really is a straightforward case. I don't think that the court respected the plaintiff's right to the inferences of any findings of fact. I think that the court, in deciding that the testimony that he didn't remember when he was told that plaintiff had suffered a stroke, that is itself an issue of fact. That's testimony that a jury should weigh and determine its credibility. And then Judge Kaplan's position that it doesn't matter, that even if he had known that he suffered a stroke, it still wouldn't matter because of all these other things, I don't think that amounts to arguable probable cause where there's no other evidence of drug use. Like, if you told me the guy suffered from a stroke, but there was also drugs found in his car, then yes, we could have a situation where he both was under the influence and suffered a stroke. Maybe even suffered a stroke because he was under the influence. But with no evidence at all of drug use or drug paraphernalia, nothing. In his car, on his person, anywhere on the scene, all you have is evidence that he was unsteady on his feet. That he got into a car accident, that he told you he hit his head and didn't know what was wrong with him. And mind you, he also was given a breathalyzer test, which he passed with all zeroes. That's part of the record. And if the officer had taken the time to inquire, he was given a toxicology test at the hospital within hours of arriving, and all of that came back as zeroes. So that was out there. This officer simply didn't want to let go of an arrest. All right, well, you've reserved two minutes of rebuttal, Mr. Padilla. We'll now hear from Ms. Paulson. Good morning, your honors. May it please the court, Susan Paulson on behalf of the city of New York. Your honors, the district court's unchallenged ruling on qualified immunity is sufficient by itself to affirm the dismissal of the malicious prosecution claim. The district court specifically said, at a minimum, given the undisputed facts in the record, reasonable officers could disagree about whether a prosecute plaintiff existed, and Officer Khan, therefore, is entitled to qualified immunity. The district court did rule on this. The plaintiff does not challenge it, and that alone is a sufficient basis. Even if this court were to examine whether or not there was a triable issue of fact, there is not, and the plaintiff is incorrect, that the court failed to draw inferences in this favor on a motion for summary judgment. In fact, the district court specifically said, as the plaintiff later, counsel later recognized, even assuming that Officer Khan was informed of plaintiff's stroke before issuing the desk appearance ticket, the fact that he suffered a stroke does not vitiate probable cause it existed on the basis of the eyewitness statement made to Officer Khan, Officer Khan's undisputed observation of plaintiff after the accident, and the drug recognition expert's evaluation of the plaintiff to the 28th precinct. This is correct, because the fact of the stroke does not make apparent the groundless nature of the charge of driving under the influence. It is simply not mutually exclusive that the plaintiff may have suffered, that the plaintiff did suffer a stroke, that is established, and it's not mutually exclusive that he could have been under the influence of drugs. What about the argument that on the scene, he passed the breathalyzer test, and he's in the hospital for four years. Are those facts- Four days. Four days. Four days. Are those facts inconsistent with drug use or alcohol abuse? No, your honor. Just to clarify the chronology, at the scene it's undisputed that he lacked his balance. He was brought back to the precinct for the breathalyzer, which he passed. But then referred on to the drug recognition expert, due to Osher's observations, that he seemed unsteady and potentially disoriented. It's then undisputed that he failed all of the other sobriety tests that the drug recognition expert did at that moment, which were various balance and coordination tests. The drug recognition expert took a urine sample, but it's undisputed the results were not facts. But he was kept at the hospital for four days. He was then in the hospital for four days. That suggests something other than drugs or alcohol. It could possibly, but it's not the duty of the police officer to investigate when it's not, it doesn't negate probable cause. He may have been under the influence of drugs and had a medical incident or condition. They're simply not mutually exclusive. And it's not for a police officer to make that judgment when he had the drug recognition expert's evaluation that he appeared to be under the influence of narcotics. There's no duty to investigate whether the stroke, where it's not plainly exculpatory here. It's not for the police officer to determine if the symptoms that Mr. Brandon was demonstrating, that the drug recognition expert found indicative of a narcotic, were actually attributable to a stroke. That simply is- If the record indicated that he was told that the stroke had taken place at or about the time of the accident, that would be a different story. Certainly, that would be a different story. In fact, if your honors look at the record, the plaintiff's own testimony in his deposition, I believe it's at pages 140 and 147, says that his children suggested they thought he was having a stroke at the precinct. There's nothing in the record. He was told at 1130, the morning after he was admitted to the hospital, that he had suffered a stroke. But there's nothing in the record from any of the testimony, or in fact, the discharge summary, which Officer Khan did not have the benefit of seeing, that indicates when the stroke occurred. There simply was no error here, and certainly, there was arguable proloquos, if not proloquos, and no tribal issue of fact as to either. I would ask this court to refer. Thanks. All right, thank you. Mr. Padilla, you have two minutes for rebuttal. As to when the stroke occurred, none of us are doctors here, I assume. But my understanding is that what my client suffered from was essentially like a slow motion stroke that occurred over the course of many hours. It wasn't a massive, instantly debilitating stroke. Well, we don't know that, right? I mean, we certainly don't know what was said to the officer about that. There's nothing in the record to indicate that the officer was told this was a slow moving nine hour stroke that took place at or about the time of the accident. Is there? Sure, sure. But to return to the fact of, it's four days later now, right? So clearly, there was something going on with this person that medical professionals kept him in the hospital for four days, okay? So now he's coming back, and I understand that the case law says that there's no duty to investigate. But it would seem to me to be an intervening fact, right? That he's been in the hospital for four days, a reasonable officer exercising some care. But that's really consistent with the stroke taking place after he was at the precinct, right? This is new to me, the idea that he somehow suffered the stroke afterwards. I mean, he's dizzy on the scene. He can't stand up on the scene. He might be dizzy on the scene because he is under the influence of narcotics, and then he has a stroke after that. We're saying that it's the officer's job to figure that out before he issues a desk appearance ticket? Yes, I think before he can move forward with these charges, he's got to have some proof of the presence of drugs, because all the proof he had in front of him was consistent with a stroke, with a medical episode. There's nothing to indicate that this man was on drugs. All of it is- Well, again, we have the drug recognition expert, right? You're saying that's intelligent, by the way. I just find the drug recognition's expert opinion to be incredible. I just don't understand how an officer can reasonably rely on another officer. I mean, he might as well have said a dog sniffed him. You know, I don't see how another person- It's the other guy's job. I mean, he's trained to do that. It's pseudoscience. It's unscientific. It's unmedical. It shouldn't exist. That's a different argument. You seem to be making a much broader argument that the DRE observations are never something that somebody can consider in making an arrest decision. Is that right? Is that what you're saying? It occurred to me at one point that there was a Monell claim, perhaps, to be made here based on the NYPD's reliance upon these drug recognition experts. Because personally, I just don't understand how it's reasonable to rely on the opinion of another officer to say that this person's on drugs. But it's kind of difficult to say at this point it was unreasonable of Judge Kahn to rely on a professional in his office without the practice and policy of the NYPD to employ and train such individuals. I, again, I just come back to some evidence of drug use. There was no drugs recovered from my client or from his car. There was no indication. It was not even like rolling papers or a lighter. The drug recognition experts seem to think that my client was under the influence of a anaglycic drug. Is that something that makes you dizzy? That's not my understanding of what anaglycic drugs do. They're sedatives. They generally put people to sleep, do they not? My own just experience as a New Yorker tells me that people under the influence of opiates don't generally get dizzy and have trouble standing. In fact, it's kind of amazing how they manage to stand up straight when they're completely messed up on dope. So I don't understand how someone who's supposedly professionally trained to recognize this thing would look at Mr. Brandon in his situation and say that he's on some sort of opiate. The man was clear. His eyes were open. He was clearly responding to questions. He was saying, I don't know why I'm dizzy. I don't know why I'm dizzy. He was acknowledging that he was unsteady on his feet. And the officer was just, had tunnel vision on an arrest and couldn't take the time to see that this man was actually suffering from a medical episode. There's nothing reasonable about that. All right, well, that is our time. We have another argument to cover. We will reserve decision on this one. Thank you both. Thank you.